Robert S. FRANK, Individually and as the Executor of the Estate of Ida L. Frank and as Trustee for The Joe Frank Trust, The Nancy A. Frank 1975 Trust, and The Daniel S. Frank Trust, Nancy A. Frank, Daniel S. Frank, Edgar E. Hancock as Trustee for Marek Bros. Profit Sharing Plan, Marek Bros. 401(K) Plan, MBC Foundation, The Executive Group, Ralph Marek, Paul A. Marek, Bruce Marek, R. Stan Marek, William A. Marek Sr., John L. Marek, Martha Marek, Bessie Marek, Frances Marek, Reinnette Marek, and Katherine Marek, and Charles M. Schwarz, Individually and as Trustee of his IRA Account, Appellants,

v.

BEAR, STEARNS & CO., CS First Boston Corp., Goldman, Sachs & Co., Greenwich Capital Markets Inc., Kidder Peabody & Co., Nomura Securities International Inc., Painewebber Inc. and Salomon Bros. Inc., Appellees.

No. 14–98–01062–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 13, 2000.

Jerald Davis Mize, Houston, for appellants.

Phylis J. Cohen, Charles W. Schwartz, Gerald G. Pecht, Houston, for appellees.

Panel consists of Justices DRAUGHN, LEE, and HUTSON–DUNN.*

## OPINION

NORMAN LEE, Justice.

Plaintiff investors filed suit charging defendant underwriters violated the Texas Securities Act, TEX.REV.CIV. STAT. ANN. art. 581—33 (Vernon 1964 & Supp.1999) in their marketing of certain exotic securities. They also charged defendants negligently marketed securities and breached a contract to which they were third-party beneficiaries. The trial court granted summary judgment on their claims without specifying a ground, prompting the investors to appeal. We affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

Appellants are individuals and small institutional investors who purchased certain securities issued by the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), issues underwritten by appellees. They were solicited by—and bought from—High Yield Management Securities Inc., a Houston investment firm which has since gone into bankruptcy. These securities, known as "collateralized mortgage obligations," were sophisticated instruments backed by income streams from pools of home mortgages. It is undisputed that these securities were extremely volatile and not suitable for less sophisticated investors.[1] Due to unfavorable market fluctuations, the holders of these securities sustained large losses, which they now seek to recover from the underwriters.

Plaintiffs' claims can be grouped under three headings. Under the first, plaintiffs contend the underwriters violated the Texas Securities Act by either controlling HYM or facilitating fraudulent acts by HYM. Under the second, plaintiffs argue Fannie Mae and Freddie Mac required the underwriters to furnish copies of the Disclosure Documents supplied by those agencies to purchasers, and that the underwriters did not do so. They contend they are third-party beneficiaries to this contract and as such can enforce it against defendants. Under the third heading, plaintiffs argue that the underwriters negligently placed these securities into the stream of commerce, breaching a duty to monitor the sales of these dangerous securities to see that they were only sold to suitable buyers. Summary judgment was granted on all claims without specifying a cause.

## STANDARD OF REVIEW

The underwriters sought summary judgment under both traditional and "no-evidence" standards. Under the traditional standard, the party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–549 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant; every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon*, 690 S.W.2d at 549. A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's

---

* Senior Justices Joe L. Draughn, Norman Lee, and D. Camille Hutson–Dunn sitting by assignment.

1. In order to make CMOs more attractive to investors, most of the risk for an entire pool of mortgages was concentrated in the lowest class of securities like the ones at issue here. In fact, our record shows that these securities were so undesirable that they were known in the trade as "toxic waste" or "waste products."

causes of action is entitled to summary judgment. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993).

 The movant is also entitled to summary judgment if the nonmovant cannot produce competent summary judgment proof for all essential elements of its claim. See TEX.R. CIV. P. 166a(i); *Ortmann v. Ortmann,* 999 S.W.2d 85, 87 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Moritz v. Bueche,* 980 S.W.2d 849, 853 (Tex.App.—San Antonio 1998, no pet.). We look at the evidence in the light most favorable to the respondent against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. *Id.*

## TEXAS SECURITIES ACT

Appellants' first issues will be determined largely by whether there is a privity requirement contained in the Texas Securities Act. Fortunately, the drafters of the 1977 revisions to 581—33 included extensive comments which we find invaluable in resolving these questions.

The provisions at issue state:

**Art. 581—33. Civil Liabilities.**

A. Liability of Sellers.

\* \* \*

(2) Untruth or Omission. A person who offers or sells a security ... by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him ...

The comments to the 1977 revisions to the Act contain the notation that the section in question "is a privity provision, allowing a buyer to recover from his offeror or seller ..." The comment goes on to note that "some nonprivity defendants may

be reached" under other sections of the Act not applicable here. Commentators at the time of revision had little doubt that the revision was intended to contain a privity provision. *See* Hal M. Bateman, *Securities Litigation: The 1977 Modernization of Section 33 of the Texas Securities Act,* 15 HOUS. L. REV. 839, 847 (1978).

Nevertheless, appellants argue that *Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704 (1956) is applicable to this case and makes the underwriters liable to them. In *Cole,* the Texas Supreme Court defined the term "seller" broadly, making liable to an aggrieved buyer any person who served as a "link in the chain of the selling process." *Id.* at 629, 291 S.W.2d at 708. The appellants' reliance on *Cole* is undermined, however, by the fact that the statute has been significantly amended twice since that case was decided. Under the 1977 amendments the liability for "control persons and aiders" was incorporated into a new section of the statute; the comment pertinent to that section notes that "*Brown v. Cole* should have no application to the new law, since § 33 F provides quite specifically who, besides a person who buys or sells, is liable, and the criteria for such liability." Guided by this comment, we look to see if § 33 F of the Act supports liability for these defendants.

Defendants are liable under this section if they directly or indirectly control a seller, buyer or issuer of a security, 581—33 F § 1, or if they directly or indirectly, with intent to deceive or defraud, materially aids a seller, buyer or issuer of a security. 581—33 F § 2. Because different tests apply to the two sections, we will take each in turn.

### 1. The Control Person Test

The Act creates liability for persons "who directly or indirectly controls a seller, buyer, or issue of a security" who run afoul of 581—33 A. According to the comment, "[t]he rationale for control person liability is that a control person is in a position to prevent the violation and may

be able to compensate the injured investor when the primary violator (e.g., a corporate issuer which has gone bankrupt) is not." The comment also notes that "a control person might include an employer, an officer or director, a large shareholder, a parent company, and a management company." *Id.* Control is defined in the same terms as under federal securities law; under that law "control means the possession, direct or indirect, of the power to direct or cause the direction of the management or policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Id.*

Federal courts construing control person liability have fashioned a two-prong test: that the defendant exercised control over the operations of the corporation in general, *and* that the defendant had the power to control the specific transaction or activity upon which the primary violation is predicated. *Abbott v. Equity Group Inc.,* 2 F.3d 613, 620 (5 th Cir.1993) (quoting *Metge v. Baehler,* 762 F.2d 621, 631 (8 th Cir.1985). Texas courts interpreting this requirement have held only that a major shareholder or director is a "control person" for purposes of the statute. *Summers v. WellTech Inc.,* 935 S.W.2d 228, 231 (Tex.App.-Houston [1 st Dist.] 1996, no writ ); *Busse v. Pacific Cattle Feeding Fund,* 896 S.W.2d 807, 815 (Tex.App.— Texarkana 1995, writ denied). Plaintiffs did not produce competent proof that the underwriters controlled the internal affairs of HYM; in fact, the underwriters' affidavits denied having any control over HYM. Summary judgment on this point was therefore proper.

## 2. Aider and Abettor Liability

A further question arises as to whether the underwriters are "aiders and abettors" for purposes of the statute.

Texas law imposes joint and several liability for anyone who "directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security." TEX.REV.CIV. STAT. ANN. art. 581–33 F, § 2 (Vernon Supp. 1999). In order to establish liability under this standard, a plaintiff must demonstrate 1) that a primary violation of the securities laws occurred; 2) that the alleged aider "had 'general awareness' of its role in this violation; 3) that the actor rendered "substantial assistance" in this violation; and 4) that the alleged aider either a) intended to deceive plaintiff or 2) acted with reckless disregard for the truth of the representations made by the primary violator. Keith A. Rowley, *The Sky is Still Blue in Texas: State Law Alternatives to Federal Securities Remedies,* 50 BAYLOR L.REV. 99, 182 (1998) (citing *Abbott v. Equity Group Inc.,* 2 F.3d 613, 621 (5 th Cir.1993) and *Ins. Co. of North America v. Morris,* 928 S.W.2d 133, 153 (Tex.App.-Houston [14 th Dist.] 1996, *rev'd on other grounds,* 981 S.W.2d 667 (Tex.1998)).

Only *Ins. Co. of North America v. Morris,* 981 S.W.2d 667 (Tex.1998), has interpreted 33 F § 2. In that case an insurance company acted as a surety, guaranteeing promissory notes given by investors participating in syndicated oil and gas partnerships; as part of its duties it reviewed the private placement memoranda for compliance with the law. Agents for the principal misrepresented the partnerships to investors; when they proved unprofitable, the investors defaulted. *Id.* at 671. INA made good on its guarantee and sued the investors for indemnity; they counterclaimed for, among other things, TSA § 33 F violations. *Id.* The trial court instructed the jury that to find INA liable as an aider, they had to find that there was a TSA violation and that INA was aware of the violations but recklessly disregarded the fact of the violation. *Id.* at 675. Although a jury found liability under 581—33 F, the supreme court found no evidence that INA was aware of the violation; the court so held even when the surety knew the president of the issuing company had been enjoined by federal authorities from offering unregistered securities like those

being offered. *Morris*, 981 S.W.2d at 675–676. The supreme court found the evidence did not show INA knew of an injunction in force at the time of the sale, and found that INA did not have a duty to disclose this information to the investors. *Id.* at 676.

■ Plaintiffs here have a less substantive case than did the plaintiffs in *Morris*. There is no showing that the underwriters knew of any securities law violation by, or enforcement action against, HYM. Moreover, if the surety in *Morris* did not have a duty to disclose known prior security violations to investors, we will not imply a duty by the underwriters to communicate the riskiness of this investment to investors in our case. We therefore overrule appellants' first, second and third issues.

## THIRD–PARTY BENEFICIARIES

In their fourth issue presented appellants contend, in essence, that they were third-party beneficiaries of the contracts between the underwriters and the issuing agencies, which required that investors be provided a copy of the prospectus before purchase. We disagree.

■ In order to show that they were third-party beneficiaries, appellants must first show that the agreement relied on, in this case agreements between Fannie Mae and Freddie Mac on the one hand and the underwriters on the other hand, was intended to benefit them directly. The underwriters contend that the agreements in question do not require them to deliver copies of the prospectus to remote purchasers such as appellants. We agree.

The language of Freddie Mac's agreement with the underwriters requires the underwriters to "deliver to each purchaser *from it* in the initial distribution of the Multiclass PCs a copy of the Offering Circular." The language from Fannie Mae's agreement with the underwriters provides that these disclosure documents "shall be used by the Dealer *in selling* the REMIC Certificates." Since appellants did not buy the securities in question from the underwriters, they could not have been an intended beneficiary under this agreement. Therefore plaintiffs are not third-party beneficiaries.

This finding is buttressed by the language of the Guidelines incorporated into the agreements. The Guidelines require "each dealer participating in a distribution of Securities should deliver or cause to be delivered the applicable Offering Documentation to each offeree who requests such documentation and to each person or entity who purchases Securities from the Dealer."[2] There is no such request in this record, merely assertions by the appellants that they were not given a copy of the disclosure documents before they purchased the securities in question. And again, since appellants did not purchase securities from the underwriters, the underwriters had no obligation under the agreement to deliver documentation to appellants.

Because appellants could not show breach of an agreement, then, we need not analyze whether they are third-party beneficiaries who may enforce the agreement against the underwriters. We therefore overrule appellants' fourth issue.

## NEGLIGENCE

■ Appellants contend in their fifth issue that the underwriters negligently placed these securities in the stream of commerce, causing harm, and therefore should be held liable. Our analysis begins, as it must, with the question of whether a given defendant owed a duty to a give plaintiff. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Greater Houston Trans. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Whether this duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.; Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex.1983).

2. "Dealer" in this case refers to the underwriters.

Courts engaged in such duty analysis consider several interrelated factors, including the risk, forseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Phillips*, 801 S.W.2d at 525.

■ Our analysis weighs against creating a negligence cause of action under the circumstances presented to us. First, there is a comprehensive regime regulating the issuance and sale of securities, which argues against the need to extend tort liability to these situations. Secondly, we believe the application of tort liability is ill-suited to an arena where downside risk is a feature inherent in the concept of the securities market. Finally, we believe adopting this suggested "strict liability" approach would be destructive to this area of commerce. We therefore decline appellants' invitation to find the underwriters liable in tort.

We therefore overrule appellants' fifth issue and affirm the judgment of the trial court.