Ardythe BARNES, Ulysses Bell, Emma Bingham, Gene Blackburn, Guy F. Bond, Joan Bond, W.R. Bond, Ima Bond, Bill Britton, Patsy Britton, Lois G. Cates, Barton G. Copeland, Alma Jean Copeland, Roberg Thomas Copeland, Earline R. Copeland, Grace J. Dickey, Mary L. Grigar, Marvin Grisham, Olivia Grisham, Sylvia A. Harr, Charles C. Huckabee, Margaret A. Huckabee, Mabel S. Hughes, Georgia Mayola Jordan, Mary L. Klein, Inez Leach, Meta S. Priest, Wilma L. Richie, Foncille Bassett Roling, Melvin Smith, Regina Smith, Troy L. Spears, Gena M. Spears, Mary R. Stillwell, June E. Stout, Individually and as Trustee for Stout Children Joint Venture, James Tigner, Billie Tigner, and Brenda J. Travis, Appellants,

v.

SWS FINANCIAL SERVICES, INC., Appellee.

No. 05–02–00305–CV.

Court of Appeals of Texas, Dallas.

Jan. 23, 2003.

Andrew B. Sommerman, Sommerman, Moore, Mitchell & Quesda, L.L.P., Dallas, Denice Smith, Houston, for appellants.

Corbet F. Bryant, Jr., Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, for appellee.

Before Justices FITZGERALD, FARRIS,[1] and ROSENBERG.[2]

[1] The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

[2] The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

## OPINION

Opinion by Justice FARRIS (Retired).

In four points of error, appellants contend the trial court erred in granting summary judgment in favor of SWS Financial Services, Inc.(SWS) because (1) the statute of limitations does not bar appellants' claims under the Texas Securities Act, TEX.REV.CIV. STAT. ANN. arts. 581–1 to 581–43 (Vernon Supp.2003) (the TSA); (2) appellants have a claim under the TSA because they were purchasing securities; (3) a no-evidence motion for summary judgment on the issue of whether SWS is a control person under the TSA is an improper procedural vehicle because it reverses the burden of proof; and (4) there is an issue of fact regarding whether SWS breached its duty to supervise Donald Brooks. We affirm the trial court's judgment because SWS is not a control person under the TSA.

### FACTUAL AND PROCEDURAL BACKGROUND

Brooks was a registered agent for Cullum & Sandow (C&S), a broker-dealer for the sale of securities, and for Security Church Finance (SCF), a broker-dealer that specialized in the sale of church-related securities. Beginning in the early 1990s, Brooks purported to sell an interim church loan fund through Brooks Financial Planning (BFP), Brooks's personal company. In 1997, SWS, then known as Brokers Transaction Services, acquired C&S's accounts, and Brooks became a registered agent for SWS. Although the majority of the investments in the interim church loan fund occurred before Brooks became a registered agent for SWS, many of the investors allowed the funds to "roll-over" after Brooks became a registered agent for SWS.

In fact, there was no interim church loan fund. Brooks placed the client funds in BFP's checking account and used the majority of the funds to pay personal expenses. In all, Brooks defrauded the investors in the interim church loan fund of over $1.7 million.

Appellants, investors in the interim church loan fund, sued SWS, among other defendants, asserting both common law and statutory claims. SWS moved for summary judgment on all claims on grounds that (1) as a matter of law, the actionable conduct occurred before Brooks became a registered representative of SWS; (2) there was no evidence of an agency relationship between SWS and Brooks sufficient to impose liability on SWS for Brooks's conduct; (3) there was no merger with or acquisition of C & S so as to impose C & S's liability, if any, on SWS; and (4) there was no private cause of action for a violation of federal securities regulations relating to the supervision of registered representatives. The trial court granted summary judgment on all claims other than appellants' claims under the TSA.

■ SWS filed a second motion seeking summary judgment on appellants' TSA claims on grounds (1) there was no evidence SWS controlled or aided Brooks or proximately caused appellants' damages; (2) as a matter of law, the interim church loan fund was not a security, SWS was not a control person under the TSA, SWS was entitled to the good-faith defense in article 581–33F, and SWS had no duty to supervise Brooks's outside activities; and (3) some of appellants' claims were barred by limitations. The trial court granted summary judgment without specifying its basis for doing so. Appellants appealed the entry of the second summary judgment.[3]

---

**3.** Appellants' points of error challenge only the trial court's grant of summary judgment

## DUTY TO SUPERVISE

In their third and fourth points of error, appellants contend the trial court erred in granting summary judgment because (1) SWS had the burden under the TSA to prove it was not a control person, and therefore, a no-evidence motion for summary judgment was the wrong procedural vehicle; (2) SWS was a control person under the TSA; and (3) there is an issue of fact regarding whether SWS breached its duty to supervise Brooks.

### A. Burden of Proof

■ SWS moved for summary judgment under Texas Rule of Civil Procedure 166a(i) on grounds there was no evidence SWS was a control person under the TSA, and under Texas Rule of Civil Procedure 166a(b) on grounds SWS was not a control person under the TSA as a matter of law. Appellants had the burden to prove SWS was a control person. *Texas Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 267 (Tex.App.-Texarkana 2002, no pet.). Accordingly, SWS's no-evidence motion for summary judgment was a proper procedural vehicle. *See* TEX.R. CIV. P. 166a(i) (no-evidence motion for summary judgment proper on essential element on which adverse party would have burden of proof at trial).

### B. Standard of Review

■ Because a no-evidence motion for summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence judgment as we apply in reviewing a directed verdict. *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 683

(Tex.App.-Dallas 2000, no pet.). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact as to the element on which the motion is based. *Wal-Mart Stores, Inc. v. Rodriguez*, 46 Tex. Sup.Ct. J. 21, 92 S.W.3d 502, 506–08 (2002). More than a scintilla of evidence exists when the evidence "furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002).

Under traditional summary judgment standards, a party moving for summary judgment must establish its right to summary judgment on the issues presented to the trial court by conclusively proving all elements of the movant's claim or defense as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex.2000). We must take as true all evidence favorable to the nonmovant and make all reasonable inferences in the nonmovant's favor. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

### C. Control Person

We next consider whether appellants produced more than a scintilla of evidence that SWS was a control person under the TSA or whether SWS established it was not a control person as a matter of law. The TSA creates joint and several liability for violations of article 581–33A between a person "who directly or indirectly controls a seller, buyer or issuer of a security" and the seller, buyer, or issuer of the security.

as to appellants' claims under the TSA. In their reply brief, appellants attack the first summary judgment, contending SWS is also liable under common-law agency principles. Appellants waived this complaint by failing to

raise it in their initial brief. TEX.R.APP. P. 38.3; *Sunbeam Envtl. Servs., Inc. v. Tex. Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex.App.-Austin 2002, no pet.).

TEX.REV.CIV. STAT. ANN. art. 581–33F(1).[4] The TSA imposes this liability because a control person is in a position to prevent the violation and may be able to compensate the injured investor when the primary violator is not able to compensate him. TEX.REV.CIV. STAT. ANN. art. 581–33F cmt.

The TSA does not define "control person." However, control "is used in the same broad sense as in federal securities law" and means "the possession, direct or indirect, of the power to direct or cause the direction of the management or policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Id.* We may also look to the federal courts' interpretations of control under federal securities law in construing control person liability under the TSA.[5] *See Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 384 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

### 1. *Applicable Test*

 The first issue is what is the applicable test for imposing control person

liability under the TSA. Based on the Fifth Circuit's adoption of the district court's opinion in *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir.1990), the Texarkana Court of Appeals recently concluded that to establish the defendant is a control person under the TSA, the plaintiff must prove the defendant (1) had actual power or influence over the controlled person and (2) induced or participated in the alleged violation. *Sandefer*, 80 S.W.3d at 268. However, the Fifth Circuit has specifically held the federal statute does not "require participation in the wrongful transaction." *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 958 (5th Cir. Feb.1981). It is not necessary for the plaintiff to show culpable participation by the defendant in order to establish the defendant was a control person because "[l]ack of participation and good faith constitute an affirmative defense for a controlling person." *Id.* It is crucial to separate the issue of control from the issue of good faith because "the burden of proof with respect to the latter

---

**4.** Article 581–33F(1) provides:

(1) A person who directly or indirectly controls a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer, unless the controlling person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. TEX.REV.CIV. STAT. ANN. art. 581–33F.

**5.** The Securities Exchange Act of 1934 provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly in-

duce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a) (1997). The Securities Act of 1933 provides:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o (1997). The test for liability is the same under both provisions. *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993).

is on the defendant while the burden of establishing control is on the plaintiff." *Id.* (citations omitted). *Dennis* simply "does not accurately reflect [the Fifth Circuit's] rejection in *Thompson* of a 'culpable participation' requirement." *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 620 n. 18 (5th Cir.1993).

The TSA also places the burden of proof as to the issue of control on the plaintiff and the burden of proof for establishing good faith on the defendant. TEX.REV.CIV. STAT. ANN. art. 581–33F(1). Accordingly, we decline to join the Texarkana Court in requiring the injured investor to show participation in the alleged violation in order to establish control person liability under the TSA.

The Houston Fourteenth Court of Appeals has also considered the issue of control person liability under the TSA. *Frank,* 11 S.W.3d at 383–84. The *Frank* plaintiffs bought securities known as collateralized mortgage obligations from an investment firm that filed for bankruptcy protection following the sales. The defendant was the underwriter for the securities purchased by the plaintiffs. The securities declined in value, and the plaintiffs sued, claiming the underwriters were liable under the TSA as control persons.

The *Frank* court determined a defendant is a control person under the TSA if it (1) exercised control over the operations of the corporation in general and (2) had the power to control the specific transaction or activity upon which the primary violation is predicated. *Id.* at 384; *see Abbott,* 2 F.3d at 620. The underwriters were entitled to summary judgment because the plaintiffs failed to "produce competent proof that the underwriters controlled the internal affairs of [the investment firm]." *Frank,* 11 S.W.3d at 384. We will apply the *Frank* test in de-

termining whether SWS is a control person under the TSA.

### 2. Application

■ The next issue is whether SWS as a broker-dealer was a control person over Brooks's sale of church-related securities when SWS did not sell church-related securities and Brooks was licensed through another broker-dealer for the sale of these products. In *Hauser v. Farrell,* 14 F.3d 1338 (9th Cir.), *overruled on other grounds by Central Bank v. First Interstate Bank,* 511 U.S. 164, 173, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the Ninth Circuit considered a similar scenario in which registered representatives of a broker-dealer allegedly violated the federal securities laws in connection with the sale of a partnership investment. The summary judgment evidence established (1) the registered representatives did not make use of the broker-dealer's access to the securities markets to promote or effectuate the sales of the partnership interests; (2) the broker-dealer had no knowledge of the complained-of transactions; (3) the partnership interests being sold by the registered representatives were unrelated to any securities sold or offered by the broker-dealer; and (4) the plaintiffs did not rely on the broker-dealer in making their decision to invest in the partnership. *Id.* at 1339–40. The Ninth Circuit concluded a broker-dealer is not a control person " 'for all actions taken by its registered representatives,' and is not an insurer of its representatives." *Id.* at 1341 (citations omitted). If the registered representative was selling products outside the markets to which the registered representative had access by reason of his relationship with the broker-dealer, the representative was acting outside the broker-dealer's control and the broker-dealer was not subject to control person liability. *Id.*

The *Hauser* analysis focuses on the second prong of the *Frank* test—whether the broker-dealer had the power to control the specific transaction or activity that violated the securities law. Applying that analysis, we conclude SWS was not a control person as to Brooks's sale of the interim church loan fund and church-related securities.

Brooks was a registered representative of SWS from August 1997 to "mid 1999," and accordingly, SWS had a duty to supervise him. However, SWS did not sell church bonds, and Brooks did not have access to this market due to his relationship with SWS. Rather, the sale of church-related securities by Brooks was done through SCF, a specialized church bond underwriter. None of Brooks's transactions related to church securities were reported to SWS, SWS did not receive a commission from these transactions, and these transactions were not included on SWS's statements to its clients. All correspondence by Brooks related to the interim church loan fund was on BFP letterhead, appellants wrote checks to BFP, and all interest payments and 1099's were from BFP. The summary judgment evidence established many of the appellants were unfamiliar with SWS and did not rely on SWS in deciding to purchase the interim church loan fund from Brooks and BFP.

SWS conclusively established it did not control Brooks's sale of church-related securities. Further, appellants failed to produce a scintilla of evidence that SWS controlled Brooks's sale of church-related securities. SWS thus did not have the power to control the specific transaction or activity upon which the primary violation of the TSA was based and is not a control person under the TSA as a matter of law. *See* Tex.Rev.Civ. Stat. Ann. art. 581–33F(1); *Frank*, 11 S.W.3d at 384. The trial court did not err in granting SWS summary judgment under either rule 166a(c) or 166a(i). We overrule appellant's third and fourth points of error.

Because the trial court did not err in granting summary judgment on grounds SWS was not a control person as to Brooks's sale of the interim church loan fund, we do not reach appellants' other points of error. *See* Tex.R.App. P. 47.1. We affirm the trial court's judgment.