United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 14, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 03-20848
_____

TIG SPECIALTY INSURANCE CO,

                                        Plaintiff-Counter Defendant - Appellee,

versus

PINKMONKEY.COM INC; ET AL,

                                        Defendants

versus

WINSOME CHEE; ART CHEE; BAILEY LEE; FRANC LEE;
KHALID HUMOND ALTHEYAB; ET AL

                                        Counter Claimants - Appellants.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

Before BARKSDALE, EMILIO M. GARZA, and PICKERING, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

        Winsome Chee, Art Chee, Bailey Lee, Franc Lee and Khalid Humond Altheyab ("the Chee

parties") appeal from the district court's entry of summary judgment in favor of TIG Specialty

Insurance ("TIG"). In this insurance coverage dispute, TIG filed a declaratory action asking the

district court to declare that it is not liable for state court judgments against PinkMonkey.com ("PinkMonkey" or "the Company"), its former chief executive officer, Patrick Greene, and a PinkMonkey securities dealer, John Kim, arising from their lawsuit with the Chee parties; or the Chee parties' settlement with specified PinkMonkey officers or directors. Finding that the district court correctly granted summary judgment in favor of TIG, we affirm.

I

A

PinkMonkey provides literature study aids through an internet website. Greene was the largest shareholder in PinkMonkey, its chairman, and its chief executive officer during the events at issue. Kim was a securities dealer representing PinkMonkey. The other officers and directors involved in the events at issue are Dennis Rigas, D. Keith McIntosh, Donald Ison, Moses Joseph, and Harry White (collectively "other officers/directors"). The Chee parties were investors in PinkMonkey.

TIG issued PinkMonkey a Director and Officer Liability insurance policy ("Insurance Policy") effective from August 23, 1999 through August 23, 2000, with a retroactive date of April 24, 1997. Section I.A of the Insurance Policy provides insurance coverage for "Insureds" of claims against them based on "Wrongful Acts" they allegedly committed. Specifically § I.A provides that:

> [TIG] shall pay on behalf of each Insured all Loss for which the Insured is not indemnified by the Company which the Insured becomes legally obligated to pay because of any Claim first made against the Insured . . .for a Wrongful Act committed, attempted or allegedly committed or attempted by such Insured . . . .

Section I.C[1] of the Insurance Policy also included a "Securities Claims Endorsement," which provides insurance coverage fo r PinkMonkey for all securities claims against it. Section I.C specifically provides that:

> [TIG] shall pay on behalf of the Company all Loss for which the Company becomes legally obligated to pay because of any Securities Claim first made against the Company during the Policy Period or, if exercised during the Extended Reporting Period, for any Securities Claim arising out of a Company Wrongful Act committed or attempted by the Company after the Policy Retroactive Date as shown in Item 7 of the Declarations.

The Insurance Policy, in § II.K,[2] defines a securities claim as:

> [A] claim made against an Insured or the Company alleging a violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any rules or regulations of the Securities and Exchange Commission adopted thereunder; similar federal, state or foreign statutes regulating securities; and any rules or regulations of any state or foreign jurisdiction, or any common law, relating to any transaction arising out of, involving, or relating to the sale of securities.

The Insurance Policy also included a Personal Profit Exclusion in § III.L excluding from coverage "any Claim [against any Insured] based upon, arising from, or in consequence of an Insured having gained in fact any personal profit, remuneration, or advantage to which such Insured was not legally entitled." Thus, while the Insurance Policy explicitly covered securities claims against the Company and Insureds, it excluded coverage of claims arising from an Insured having gained a personal profit to which such Insured was not legally entitled.

---

[1]Section C was added to the Insurance Policy by an Endorsement for Securities Claims that was effective at the inception of the Insurance Policy.

[2]Section K was added to the Insurance Policy by an Endorsement for Securities Claims that was effective at the inception of the Insurance Policy.

B

The Chee parties filed a Texas state court action in July 2000 claiming that Kim and Greene solicited them to invest in PinkMonkey and made numerous misrepresentations about the investment. Specifically, the Chee parties asserted that (1) Kim and Greene falsely promised that thirty percent of the PinkMonkey stock they bought would be registered under federal securities laws; (2) Kim and Greene falsely referred to PinkMonkey as a "no risk and good investment;" (3) Kim and Greene falsely claimed that PinkMonkey was scheduled to distribute shares of stock it held in Houston Interweb Design Inc., and that the Chee parties would receive five shares of Houston Interweb for every one hundred shares of PinkMonkey they purchased. The Chee parties alleged violations of the Texas Blue Sky Act, TEX. REV. CIV. STAT. art. 581-33(A), including control person liability; violations of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE art. 27.01; and negligent misrepresentation.

The Chee Parties settled with four of the other directors/officers prior to trial. One of the other directors/officers defaulted. The Chee parties went to trial against PinkMonkey, Greene, and Kim. The state court trial resulted in a judgment in favor of the Chee parties. The jury found that PinkMonkey sold stock to the Chee parties by means of an untrue statement of material fact or an omission to state a material fact; PinkMonkey was materially aided by Greene and Kim; Greene, Kim, and PinkMonkey made negligent misrepresentations to the Chee parties; PinkMonkey and Greene committed fraud against the Chee parties; and Greene benefitted from his false representation or promise. The jury found that Kim did not benefit from his actions. The state court judgment imposed liability for actual damages, and awarded fees and costs to the Chee parties.

-4-

The defendants claimed under the Insurance Policy in the state court. TIG responded with a reservation of rights, and then denied the coverage claims of PinkMonkey, Kim, Greene, and two of the directors who settled prior to trial. TIG then filed a declaratory action in the district court, which had diversity jurisdiction over the action, seeking a ruling that the claims were not covered under the Insurance Policy. The Chee parties intervened as third-party defendants and counter third-party plaintiffs. TIG and the Chee parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of TIG because it ruled that the Personal Profit Exclusion in the Insurance Policy excluded from coverage all of the claims at issue as Greene personally profited from the sale of the stock to the Chee parties. The district court also ruled that the claims against PinkMonkey, Kim, and the other officers/directors were excluded because those claims were based upon the claims against Greene.

II

The Chee parties appeal the district court's order contending that (1) Greene did not gain in fact any personal profit, remuneration, or advantage to which he was not legally entitled; and (2) even if the personal profit exclusion applies to Greene, it does not apply to the Company or the other director/officer defendants.

We review the district court's grant of summary judgment *de novo*, considering all evidence in a light most favorable to the non-movant. *Greenberg v. Crossroads Sys., Inc*. 364 F.3d 657, 661 (5th Cir. 2004). Summary judgment will be affirmed where, after independent review, there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *Id.* Summary judgment may be affirmed on any basis supported by the record. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 537-38 (5th Cir. 2003). Because this case comes

before us through diversity jurisdiction, we apply Texas law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938).

Under Texas law, in construing an insurance policy contract, the court must strive to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). If a written contract is worded in such a way that it can be given a definite or certain legal meaning, then the contract is not ambiguous. *Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). A contract will become ambiguous only if its meaning is uncertain or if it is subject to two or more reasonable interpretations. *Id.* If the insurance policy is susceptible of more than one reasonable interpretation, the court must adopt the construction that most favors the insured. *W. Heritage Ins. Co. v. Magic Years Learning Ctrs. & Child Care Inc.*, 45 F.3d 85, 88 (5th Cir. 1995). However, an ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Forbau*, 876 S.W.2d at 134. "Therefore, we must read the allegations of the underlying state court suit in light of the policy's insuring provisions and exclusions to determine whether there is coverage, bearing in mind these liberal rules of construction in favor of the insured." *Magic Years,* 45 F.3d at 88.

A

In the district court the Chee parties claimed that section I.A of the Insurance Policy provides coverage for the claims against the individual officers and directors and that section I.C covers their claims against PinkMonkey. The district court, however, ruled that the Personal Profit Exclusion bars coverage under both provision I.A and I.C because Greene had gained in fact a personal profit or advantage to which he was not legally entitled. On appeal, the Chee parties contend that Greene did not personally profit from his misrepresentation and that ruling that he personally profited within the

meaning of the Personal Profit Exclusion would eviscerate the Securities Claims Endorsement.

For the Personal Profit Exclusion to apply to Greene, the Chee parties' claims must be based upon, arising from, or in consequence of his: (1) having gained in fact any personal profit, remuneration, or advantage; (2) to which he was not legally entitled. *See* Insurance Policy § III.L. Greene was found liable for statutory stock fraud under Section 27.01 of the Texas Business & Commerce Code. In order to find Greene liable for statutory stock fraud the jury was required to find that he "benefitted from the false representation or promise." Benefit is synonymous with advantage or profit. *See* BLACK'S LAW DICTIONARY 150 (7th ed. 1999). Thus, Greene's statutory stock fraud conviction indicates that he gained in fact a personal profit or advantage.

However, the jury's finding that Greene benefitted is not sufficient on its own to trigger the Personal Profit Exclusion. TIG must also establish that Greene was not legally entitled to his gain. Thus, we must determine precisely what Greene's gain was and whether he was legally entitled to it.

This court has found that a majority shareholder in a small startup company gains a personal advantage from a sizeable capital investment in the company because it gives the majority shareholder the opportunity to become the owner of a successful business. *See Jarvis Christian College v. Nat'l Union Fire Ins. Co.,* 197 F.3d 742, 747 (5th Cir. 1999). Here, Greene was the majority shareholder in PinkMonkey, a small startup with only four employees that operated out of a garage. Greene was also the chairman and chief executive of PinkMonkey. As in *Jarvis,* Greene gained a personal advantage from the opportunity to own and participate in a successful business when PinkMonkey was infused with capital as a result of his fraud.

A defendant is not legally entitled to an advantage or profit resulting from his violation of law

if he could be required to return such profit. *Cf. Jarvis*, 197 F.3d at 749 (holding that a fiduciary is not legally entitled to any profit or advantage he gains as a result of breach of duty because such a fiduciary must account to his principal for all he has received). Here, Greene's advantage resulted from his violation of § 27.01. The remedies for a violation of § 27.01 include the equitable remedy of recision, which requires the return of any money paid. *See Scott v. Sebree*, 986 S.W.2d 364, 368-69 (Tex. App. 1999) (holding that § 27.01 allows the equitable remedy of specific performance because § 27.01 allows for recision). Because return of the capital investment in PinkMonkey could have been required, there was no legal entitlement to the capital investment. Greene's fraud resulted in the capital investment, which lead directly to his personal advantage. Greene was not legally entitled to profit from his fraud.

The Chee parties contend that finding that Greene was not legally entitled to the advantage he gained from his fraud would eviscerate the Securities Claims Endorsement. This is plainly untrue. The Personal Profit Exclusion only applies to claims against an Insured. As explained in detail in section II.B below, Insureds are separate from the Company. While some securities claims against the Company will be considered a claim against an Insured, when, as explained below, both the Company and Insured are sued based upon the same wrongful act, not all claims against the Company will be considered a claim against an Insured. As the Personal Profit Exclusion does not necessarily apply to all Securities claims against the Company, it does not eviscerate the Securities Claims Endorsement.

Moreover, Greene was not the only officer/director sued for a securities claim. Greene, however, was the only officer/director who gained an advantage or personal profit. For example, although Kim made negligent misrepresentations to the Chee parties, he was not found to have

benefitted from his misrepresentations, according to the State court jury findings. Consequently, insurance coverage over a claim brought solely against Kim could not be excluded under the Personal Profit Exclusion. Thus, not all securities claims against Insureds will trigger the Personal Profit Exclusion. As such, the Securities Claims Endorsement is not eviscerated by finding that Greene profited within the meaning of the Personal Profit Exclusion.

B

The Chee parties next assert that even if the Personal Profit Exclusion applies to Greene, it should not apply to either the Company or the other directors and officers. They contend that the Insurance Policy limits the Personal Profit Exclusion to Insureds who themselves have obtained an improper profit or gain. This contention is contrary to the plain language of the Personal Profit Exclusion.

The Personal Profit Exclusion states that "[t]his insurance does not apply to any Claim made against *any Insured* arising out of [ ] the following: . . . any Claim based upon, arising from, or in consequence of *an Insured* having gained in fact any personal profit, remuneration, or advantage to which such Insured was not legally entitled."  Insurance Policy § III.L. (emphasis added). The exclusion does not require that the claim be based upon *the Insured, that Insured* or *such Insured* having gained a personal profit or gain, but based upon *an Insured* having gained a personal profit. Although the terms "the Insured," "that Insured" or "such Insured" preceding personal profit would indicate the same insured as the claim is brought against, the Personal Profit Exclusion uses the more general term "an Insured." This indicates that coverage is excluded for all Insureds, not merely the Insured who profited. *See Coregis Ins. Co. v. Lyford,* 21 F.Supp.2d 695, 698 (S.D. Tex. 1998) (holding that exclusions concerning "the acts of 'an' or 'any' insured, as opposed to exclusions

concerning acts of 'the' insured, operate to bar coverage for all insureds when one insured commits such an act").

Moreover, "courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex. 1995). Here, the Personal Profit Exclusion does use the specific term "such Insured" to indicate the same insured as previously referred to, when it states that the claim must arise from "an Insured having gained in fact any personal profit . . . to which *such Insured* was not legally entitled." The use of more specific language within the same provision further indicates that "an Insured" does not necessarily refer to the same insured against whom the claim was brought. By considering the entire provision, it is clear that a claim arising out of an Insured having gained a personal profit is not limited to a claim against the Insured who profited.

If the claims against Kim and the other officers/directors are claims against Insureds arising out of Greene's personal profit, then the Personal Profit Exclusion is applicable to Kim and the other officers and directors. The Insurance Policy defines an Insured as

> any person who after the Policy Retroactive Date is one of the following: 1. A duly elected Director of the Company; 2. A duly elected or appointed Officer of the Company; 3. The estate, heirs or legal representative of any deceased Director of the Company who was a Director or Officer of the Company at the time of the Wrongful Act upon which an insurable Claim is based; or 4. The legal representative of any Director or Officer of the Company in the event of his or her incompetency, insolvency, or bankruptcy.

Insurance Policy Section II, ¶ H. All officers and directors are Insureds, thus the claims against Kim[3] and the other officers and directors are claims made against "any Insureds." The claims against Kim and the other officers and directors are based upon Greene having gained an advantage to which he

---

[3]It is not disputed that Kim is an officer or director covered by the insurance policy at issue.

was not legally entitled. The claims against the directors and officers other than Kim were for control person liability. The rationale behind control person liability is that a control person is in a position to prevent the securities violation at issue. *See Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 383-84 (Tex. App. 2000). Thus, control person liability is based upon the underlying securities violations. In this case, the claims against the officers and directors other than Kim were based upon Greene's fraud, which enabled Greene to gain an advantage to which he was not legally entitled. Insurance coverage for the claims against the officers and directors other than Kim are thus excluded by the Personal Profit Exclusion.

The jury found that Kim materially aided in selling stock to the Chee parties. Greene's advantage, to which he was not legally entitled, was derived from the stock sale to the Chee parties. The claims against Kim were thus based upon Greene's advantage. Accordingly, the Personal Profit Exclusion also excludes coverage for the claims against Kim.

The Chee parties argue that the Personal Profit Exclusion does not exclude the claims against the Company because it only applies to any claim made against "any Insured" and PinkMonkey is not an Insured. However, under the "Limits of Liability" section of the Insurance Policy, "[a]ll Claims arising from the same Wrongful Act or interrelated or continuous Wrongful Acts of one or more Insured shall constitute a single Claim." Insurance Policy § V.B. Here, the claims against the Company and the claims against Greene arise from the same Wrongful Act, the misrepresentations made to the Chee parties. Accordingly, the claims against the company and against the Insureds arise from the same Wrongful Act and constitute a single claim. As such, the claim against the Company is also a claim against an Insured. *See Forbau,* 876 S.W.2d at 133 ("This court is bound to read all parts of a contract together to ascertain the agreement of the parties."). The Personal Profit

-11-

Exclusion thus excludes coverage for the claims against PinkMonkey.

III

The district court correctly ruled that the Personal Profit Exclusion excluded insurance coverage for the claims against Greene, Kim, the other officers and directors, and PinkMonkey. Consequently, the district court order granting summary judgment in favor of TIG is AFFIRMED.

PICKERING, Circuit Judge, specially concurring in part and dissenting in part:

I concur with the majority as to the result reached in this case as to Greene, PinkMonkey's chief executive, and the result reached as to all of the other directors of the company, except White. I do not agree that this case should be affirmed as to the securities dealer, John Kim, and director of PinkMonkey, White. I likewise do not agree that the decision should be affirmed as to PinkMonkey. Consequently I respectfully dissent as to PinkMonkey, Kim and White.

The Chee parties argue that under the holding of *Alstrin v. St. Paul Mercury Insurance Co.*, 179 F. Supp. 2d 376 (D. Del. 2002), the judgment against all defendants should be reversed based upon the argument that the exclusion takes away the coverage granted by the insuring agreement. The problem with that argument is that it is contrary to the holding of this Court, interpreting Texas law in *Jarvis Christian College v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania,* 197 F.3d 742 (5th Cir. 1999). Consequently, I agree with the majority that the decision as to Green should be affirmed. The policy at issue also specifically provides that an insured cannot settle without the consent of the insurer. Since the directors other than White settled without the consent of the insurer, I would also affirm as to those directors. As to director White there was a default judgment and as to securities agent Kim there was a finding of liability based upon negligent misrepresentation.

## I.

Under well established Texas law, "if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the <u>construction that most favors the insured</u>." *National Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991) (citations omitted) (emphasis added). The *Hudson* court held "[i]n

particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured." *Id.* (citations omitted) (emphasis added). The *Hudson* court went on to say "[t]he court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.* (citations omitted) (emphasis added).

The Fifth Circuit, in summarizing Texas law, set out the above principles and noted specifically that "exceptions and limitations of liability are even more strictly construed against the insurer." *Western Heritage Ins. Co. v. Magic Years Learning Centers and Child Care, Inc.*, 45 F.3d 85, 88  (5th Cir. 1995) (emphasis added). "An intent to exclude coverage must be expressed in clear and unambiguous language . . ." *Hudson*, 811 S.W.2d at 555 (emphasis added).  The case before this Court involves an exception, or exclusion.

The policy in question is a "DIRECTOR AND OFFICER LIABILITY POLICY" comprised of nine sections, numbered with Roman numerals, I through IX, plus an Endorsement.  Section I.A. provides "[w]e shall pay on behalf of each Insured all loss for which the Insured is not indemnified by the Company which the Insured becomes legally obligated to pay . . ." Section I.B. provides "[w]e shall pay on behalf of the Company all loss for which the Company grants indemnification to each insured . . ."  Section I.C. provides "[w]e shall pay on behalf of the Company all losses for which the Company becomes legally obligated to pay because of any Securities Claim . . ." The endorsement added a definition of a securities claim as follows: "'Securities Claim' means a claim made against an Insured or the Company alleging a violation of the Securities Act . . ." (emphasis added).

The Definition section of the policy defines the word "Insured" as being a "director" or an "officer" of the company. Both officer and director are singular words. Although the company is covered as to a securities claim, the company itself is not covered under other provisions of the policy and is not defined as an "Insured." The policy provides that "[t]he written application for coverage shall be construed as <u>a separate application for coverage by each of the Insureds.</u>" (Section "IV. REPRESENTATIONS AND SEVERABILITY") (emphasis added).

Appellants contend that the exclusion applies only to a claim against an insured who receives a profit or gain to which he or she is not legally entitled. That is not an unreasonable interpretation. The exclusion in question is set out and laid out as follows:

III. EXCLUSIONS

This insurance does not apply to any **Claim** made against <u>any **Insured**</u> arising out of any of the following:

* * * *

L. Any **Claim** based upon, arising from, or in consequence of <u>an **Insured**</u> having gained in fact any personal profit, remuneration, or advantage to which <u>such **Insured**</u> was not legally entitled. (emphasis added)

This Exclusion uses the word "Insured" three times. Each time the word "Insured" is singular. Each time it is used, it is modified by a different adjective. Chronologically, "Insured" is modified by "any," "an," and "such." According to the dictionary, "any" means "one," singular, but it can mean "some," plural.[4] "An" is clearly singular. "Such insured" refers back to "an insured." So, the third time the word "insured" is used in the exclusion it clearly refers back to the second time

_____

4 The first definition of the word "any" is "any. 1. Being one (or, pl., some)." *Webster's New Collegiate Dictionary* 40 (1958 ed.).

the word insured is used.

According to the dictionary definition, the word "any" can be interpreted as being singular or plural. Consequently, appellants' contention that it is to be construed as being singular is not unreasonable. Bolstering appellants' interpretation is the fact that each time the word "insured" is used, it is singular and that the words "such insured" refer back to "an insured." Again, interpreting the word "any insured" as being singular, and "such insured" as referring back to the specific insured who profited or gained inappropriately, appellants' construction of the exclusionary clause is not unreasonable.

Accordingly it is not unreasonable to interpret the EXCLUSION as excluding from coverage only a claim against the single insured who gained a profit or advantage to which he was not legally entitled. Such a construction would not exclude the claim against the securities dealer Kim who was found liable for negligent misrepresentation, nor would it exclude the claim against White since he was not found to have inappropriately profited, nor would it exclude the claim against the Company. The interpretation argued for by the appellants is not only a reasonable interpretation, but in the mind of this writer, it is more consistent with the wording of the exclusion.

The majority notes that the jury found that "Green, Kim, and PinkMonkey made negligent misrepresentations to the Chee parties" and that "PinkMonkey and Green committed fraud against the Chee parties[.]" The majority then notes that "insurance coverage under a claim brought solely against Kim could not be excluded under the Personal Profit Exclusion." So, according to the majority, if appellants had filed their suit against Green, Kim, White, and PinkMonkey on the theory of negligent misrepresentation, the claim would have been covered but that since they included the fraudulent claim against Green as to which he received inappropriate gain, coverage is excluded. It

-16-

is incongruous that if appellants had filed against Kim for negligent misrepresentation, such a claim would have been covered, but since they sued Kim, Green and PinkMonkey jointly, the claims are excluded from coverage.

The majority focuses on the words "an insured," construes the words "an insured" as meaning "any insured" (plural) and concludes that if a claim is excluded based on the actions of any one insured who receives an inappropriate gain or profit, it is barred as to all insureds. While that may be a reasonable interpretation, it is not the only reasonable interpretation. While it is reasonable to interpret "an insured" as meaning any insured, it is also reasonable to interpret "any" insured as a single insured, thus making the exclusion apply only to a claim against the specific insured who received the ill gotten gain. As the Court in the *Western Heritage* case concluded "[m]indful that we must adopt any construction of an exclusionary clause urged by the insured as long as it is not unreasonable, (citation omitted) <u>we must read the</u> employer liability <u>exclusion as applying separately to each insured</u> . . ." *Western Heritage*, 45 F.3d at 90 (emphasis added).

If "any insured" in the exclusion is interpreted as singular, then the only party barred is the one receiving the inappropriate profit or gain. If that is a reasonable interpretation, the following analysis is superfluous.

## II.

Appellants contend that since Section I.C. provides specific coverage for "the Company" as to a securities claim, and since the exclusion does not clearly and unambiguously exclude a claim against the company, that the claim against the company is not excluded. In fact, the exclusionary clause does not exclude a claim against the company at all, much less clearly and unambiguously. Appellants' interpretation that the exclusionary clause does not exclude a claim against the company

is not an unreasonable interpretation. The exclusion specifically excludes "any claim made against any insured" but does not exclude a securities claim against the company. The majority acknowledges that "The Personal Profit Exclusion only applies to claims against an Insured . . . Insureds are separate from the Company." The insured in writing the policy demonstrated in at least three instances that they knew how to make a paragraph apply to both "an insured" and the "company." As the Texas Supreme Court held in *Hudson*, "an intent to exclude coverage must be expressed in clear and unambiguous language . . ." 8ll S.W.2d at 555.

In order to get around the fact that the wording of the exclusion only excludes a claim against an "insured" and not the company, the majority relies on the policy language that "all claims arising from the same wrongful act or interrelated, repeated, or continuous wrongful acts of one or more injured shall constitute a single claim." The fallacy of this conclusion is that this definition of "claim" is found under Section "V. LIMITS OF LIABILITY" which further states that "the claims shall be subject to a single retention." Since this definition of "claim" is not found in the Definition section of the policy, but rather is found in the "Limits of Liability" section, it is not unreasonable to construe this definition of "claim" as being applicable only to the limits of liability. It is not unreasonable to interpret this as limiting the insurer's limits of liability and not the extent of coverage. Particularly is this not an unreasonable interpretation in view of the fact that Section II, the Definition section of the policy, gives the word "claim" an entirely different definition.

TIG "may have intended to exclude coverage of claims [against the company] but it did not do so. Instead, the policy excludes coverage [only, to a claim made against any insured.] The author of the policy knew how to write [an exclusion that would have excluded "an insured" and the "company"] for he [made this distinction in at least three different places in the policy] . . . ." *Western*

*Heritage*, 45 F.3d at 89. "If [TIG] wanted to exclude [a claim against the company], then it was incumbent upon it to expressly and clearly state the exclusion in the policy. Having failed to do so, [TIG] cannot now complain." *Hudson Energy Co.*, 811 S.W.2d at 555.

But even more importantly, the majority still ignores appellants' contention that the Exclusion, narrowly interpreted as we must, excludes a claim against only the insured who received the inappropriate gain or profit.

III.

In ordinary usage the word "claim" can refer to a single theory of liability, or it can refer to an entire lawsuit including multiple theories. In the Definition section of the policy the word "claim" is defined as "'**Claim**' means a written demand for monetary damages, including the institution of suit or a demand for arbitration." (Section II.A. Definition)   Quite often one lawsuit will have a number of claims representing the different theories of a lawsuit. Certainly appellants had separate claims against each defendant. The policy, by its own terms, provided for separate coverage as to each insured and the company.

If one uses the definition of "claim" as defined in the Definition section of the subject insurance policy and interprets the word "any" as being singular as the word is defined in the dictionary, the exclusion would read as follows:  This insurance does not apply to "a written demand for monetary damages, including the institution of suit" made against "any insured" (one insured) arising out of any of the following:   any suit based upon, arising from or in consequence or an insured (one insured) having gained in fact any personal profit, remuneration, or advantage of which such insured was not legally entitled. To read the word "company" into this exclusion is less reasonable than to read the company out of the exclusion since TIG clearly knew how to amend the

-19-

policy and in fact amended the Definition section by the Endorsement in several respects.

The majority writes

> Although the terms "the insured" "that insured" or "such insured" preceding personal profit <u>would indicate</u> the same insured as the claim is brought against, the personal profit exclusion uses the more general term "an insured." <u>This indicates</u> that coverage is excluded for all insureds, not merely the insured who profited. (emphasis added).

Whether the words "an insured" indicates that coverage is excluded for all insureds is not the test. The test is whether or not there is another reasonable interpretation of the exclusion which is to be particularly construed against the insurer. The exclusion is not expressed in clear and unambiguous language as Texas law requires. The above quotation from the majority proves the point of this dissent. The majority finds that the words "an insured" <u>indicates</u> that coverage is excluded for all insureds. The majority notes that the terms "the insured," "that insured" or "such insured" <u>would indicate</u> the same insured as the claim is brought against, thus providing coverage to appellants. The majority then chooses between these two indications. It is not enough that an insurance policy indicates that an exclusion is involved, but the exclusion must be stated in clear and unambiguous terms. That the insured did not do.

The majority would be correct if Texas law provided that uncertainties or ambiguities in an insurance policy should be construed in favor of the insurer. But Texas law does not so provide. In fact, Texas law is to the contrary.

I, therefore, specially concur in part and respectfully dissent in part.