**HARVESTONS SECURITIES, INC., Appellant,**

v.

**NARNIA INVESTMENTS, LTD., Appellee.**

No. 14–05–00206–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 11, 2007.

Rehearing Overruled March 8, 2007.

W. Joel Bryant, Houston, for appellant.

Patrick Lanier, Austin, for appellees.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## SUBSTITUTE MAJORITY OPINION[1]

KEM THOMPSON FROST, Justice.

Appellant Harvestons Securities, Inc., defendant in the trial court, brings this restricted appeal of a default judgment rendered against it and in favor of appellee Narnia Investments, Ltd., the plaintiff in the trial court. In three issues, Harvestons contends that service of process was defective and therefore the trial court erred in rendering the default judgment. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Narnia Investments filed suit against several defendants, including Harvestons.[2] Narnia's petition stated:

> Harveston Securities, Inc. is a securities dealer registered with the Securities and Exchange Commission, the National Association of Securities Dealers, Inc. and the State of Texas (and as such, may be served with process by serving the Texas Securities Commissioner at 200 E. 10th Street, 5th Floor, Austin, Texas 78701).[3]

The district clerk issued citation directed to "Harveston Securities Inc. by serving the Texas Securities Commissioner[,] 200 E 10th Street[,] 5th Floor Austin[,] Texas 78701." The return of service indicates that the citation was served on September 7, 2000, at "200 E. 10th, Austin, Tx. 78701

in Travis County . . . by delivering to Harveston Securities, by serving the Texas Securities Commissioner, by delivering to JoAnn Kocerek defendant, in person, a true copy of this Citation together with the accompanying copy(ies) of the Petition attached thereto."

Harvestons did not file an answer or otherwise appear in the case, and Narnia moved for default judgment. The trial court granted an interlocutory default judgment in favor of Narnia and against Harvestons for $365,000, plus attorney's fees, prejudgment interest, and postjudgment interest. Two months later, the trial court severed the interlocutory default judgment against Harvestons from the remaining claims against the other defendants. The trial court then rendered a final default judgment against Harvestons awarding the same relief as in the interlocutory judgment.

Five months after this final judgment, Harvestons filed an unsworn motion for new trial claiming it had no actual knowledge of the pending litigation before November 15, 2004. Harvestons sought to have the default judgment set aside. The trial court lacked plenary power over Harvestons's untimely motion and denied it. Harvestons then filed a timely restricted appeal.

## II. ISSUES PRESENTED

Harvestons asserts three similar issues on appeal, all of which are premised on Harvestons's contention that the citation,

---

**1.** We overrule appellee's motion for rehearing. The majority opinion of October 31, 2006 is withdrawn, and this Substitute Majority Opinion is issued in its place.

**2.** Jon Ginder is also named as a plaintiff asserting claims against Harvestons. Ginder, however, did not move for or obtain a default judgment against Harvestons, and Ginder's claims, if any, were not severed from the

main action by the trial court's subsequent severance order.

**3.** The petition, citation, and return of service all use the name "Harveston Securities, Inc." However, the document appointing the Commissioner as Harvestons's agent for service of process as well as the default judgment use the name "Harvestons Securities, Inc."

service, and the return of service do not comply with Texas Rules of Civil Procedure 16, 99, 106, and 107. More specifically, Harvestons asserts that service of process was invalid because:

(1) The return of service shows that process was delivered to someone other than the one named in the citation. The person named in the citation was the Texas Securities Commissioner, and the return of service states that process was delivered to "JoAnn Kocerek."

(2) The citation and the return of service do not show that the person served—JoAnn Kocerek—had the authority to accept process on behalf of Harvestons or the Texas Securities Commissioner.

(3) The return of service does not show a valid manner of service.

## III. STANDARD OF REVIEW

 Harvestons may file a restricted appeal if (1) it filed notice of restricted appeal within six months of judgment, (2) it was a party to the underlying suit, (3) it did not participate in the hearing resulting in the judgment on appeal and did not file timely postjudgment motions or requests for findings of fact and conclusions of law, and (4) it shows error apparent on the face of the record. *Alexander v. Lynda's Boutique,* 134 S.W.3d 845, 848 (Tex.2004). The scope of a restricted appeal (formerly writ of error) is limited to error on the face of the record. *See Norman Communications v. Texas Eastman,* 955 S.W.2d 269, 270 (Tex.1997) (per curiam). Notably, in restricted appeals, "[t]here are no presumptions in favor of valid issuance, service, and return of citation." *Fidelity & Guar. Ins. Co. v. Drewery Const. Co.,* 186 S.W.3d 571, 573–74 (Tex.2006); *Primate*

*Const., Inc. v. Silver,* 884 S.W.2d 151, 152 (Tex.1994). This last rule must be strictly observed because presumptions can neither be confirmed nor rebutted by evidence in an appellate court. *Fidelity & Guar. Ins. Co.,* 186 S.W.3d at 573. Thus, for example, if the citation says an amended petition was attached (which named the defaulted party) and the return says the document served was the original petition (which did not name the defaulted party), an appellate court cannot tell from the record which is true. *Id.* Similarly, if the petition says the registered agent for service is "Henry Bunting, Jr." but the citation and return reflect service on "Henry Bunting," an appellate court cannot tell whether the two names mean the same or different persons. *See Uvalde Country Club v. Martin Linen Supply Co.,* 690 S.W.2d 884, 885 (Tex.1985). Recognition of this lack of legal presumptions in favor of valid issuance, service, and return of citation is critical to proper resolution of this restricted appeal.

## IV. ANALYSIS

In its second issue, Harvestons contends that service of process was defective because the return did not show that the person served—JoAnn Kocerek—had the authority to accept process on behalf of Harvestons or the Texas Securities Commissioner.[4] In response, Narnia contends that service was perfected because the record reflects that service was made on the Texas Securities Commissioner, who thereafter properly forwarded process to Harvestons. In support of this argument, Narnia relies primarily on the *Capitol Brick* line of cases. *See, e.g., Capitol Brick, Inc. v. Fleming Mfg. Co.,* 722 S.W.2d 399, 401 (Tex.1986). Before reach-

---

4. We address Harvestons's second issue first because if this issue is resolved in Harvestons's favor, it will be dispositive of the entire appeal.

ing the issue of whether the return demonstrates that JoAnn Kocerek had the authority to accept process· on behalf of Harvestons or the Texas Securities Commissioner, we address Narnia's argument that, under the *Capitol Brick* line of cases, service was proper in this case.

■ The *Capitol Brick* line of cases is based on a statute providing that all certif-·icates issued by the Secretary of State (hereinafter "Secretary") in accordance with the Texas Business Corporation Act shall be taken and received in all courts as prima facie evidence of the facts therein stated. *See* TEX. BUS. CORP. ACT art. 9.05 (Vernon 2003); *Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 465 (Tex.2004) (relying on article 9.05 in *Capitol Brick* analysis and agreeing with analysis in *G.F.S. Ventures, Inc. v. Harris*); *G.F.S. Ventures, Inc. v. Harris*, 934 S.W.2d 813, 818 (Tex. App.-Houston [1st Dist.] 1996, no writ) (relying on article 9.05· in *Capitol Brick* analysis). Under its unambiguous language, article 9.05 of the Texas Business Corporation Act does not apply to certificates issued by the Texas Securities Commissioner (hereinafter "Commissioner"). *See* TEX. BUS. CORP. ACT art. 9.05. Although Narnia asserts that the *Capitol Brick* line of cases should apply, Narnia does not identify any case applying this line of cases to certificates issued by the Commissioner or to service on the Commissioner, and our independent research has not revealed any such case. Therefore, this issue appears to be one of first impression.

**A. Should the *Capitol Brick* line of cases be extended so as to apply to certificates from the Texas Securities Commissioner?**

Article 581–30 of the Texas Securities Act is the only part of that statute that is arguably similar to article 9.05 of the Texas Business Corporation Act. *See* TEX.REV. CIV. STAT. ANN. art. 581–30 (Vernon Supp. 2005) (stating, in .pertinent part, that "[c]opies of all papers, instruments, or documents filed in the office of the Commissioner, certified by the Commissioner, shall be admitted to be read in evidence in all courts of law and elsewhere in this state in all cases where the original would be admitted in evidence"). Whereas article 9.05 states that facts stated in certificates of the Secretary are received in all courts as prima facie evidence, the Texas Securities Act states only that copies of documents filed with the Commissioner shall be admitted into evidence in place of the originals, if the copies are certified by the Commissioner and if the originals otherwise would be admissible. *Compare* TEX. BUS. CORP. ACT. art. 9.05 *with* TEX.REV. CIV. STAT. ANN. art. 581–30. Allowing the admission of copies certified by the Commissioner if the originals would be admissible is very different from accepting as true the factual statements stated within the Secretary's certificate.[5]

The *Capitol Brick* line of cases is not grounded simply on the presence of a certificate from a government official; rather, cases in this line also are based on the following premises:

(1) The Secretary has stated in a certificate that a citation and petition in

---

5. The dissent states that it would not be logical for the Secretary's certificate to carry more weight than that of the Commissioner. *See post* at 4, n. 6. However, we look to the plain meaning of the respective statutes, and we note the differences in the statutory language. Our function is not to question whether there is a sound basis for the differences in the respective statutes but to apply them as written. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000); *Lee v. City of Houston*, 807 S.W.2d 290, 293 (Tex.1991).

the case were served on the Secretary in accordance with the Business Corporations Act; and

(2) Article 9.05 requires Texas courts to receive such certificates as prima facie evidence of the facts stated therein.[6]

*See Cullever,* 144 S.W.3d at 465–66 (relying on certificate from Secretary stating Secretary had been served with citation and petition and forwarded them to defendant by certified mail); *Capitol Brick, Inc.,* 722 S.W.2d at 400–01 (same); *G.F.S. Ventures, Inc.,* 934 S.W.2d at 818 (same); *Vanguard Invs. v. Fireplaceman, Inc.,* 641 S.W.2d 655, 656 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.) (same). Significantly, the two certificates of the Commissioner in this case contain neither of these predicates. Both state in pertinent part as follows:

I, DENISE VOIGT CRAWFORD, Securities Commissioner of the State of Texas, do hereby certify that I have caused to be made a careful examination of the records of the State Securities Board, which records are kept under my supervision and control under the provisions of [the Texas Securities Act] and from such examination, I do further certify that the attached [number of at-tached pages] pages constitute a true and correct record of information filed with the Securities Commissioner.

Unlike the certificates issued from the Secretary of State, these two certificates do not state: (1) that the Commissioner received or was served with a citation or petition in any case or (2) that the attached documents accurately reflect the actions or events stated or indicated therein. Because the certificates in question do not state that a citation and petition in the case were served on the Commissioner, the *Capitol Brick* line of cases does not apply.[7] *See Cullever,* 144 S.W.3d at 465–66; *Capitol Brick, Inc.,* 722 S.W.2d at 400–01; *G.F.S. Ventures, Inc.,* 934 S.W.2d at 818; *Vanguard Investments,* 641 S.W.2d at 656. Although the Commissioner may very well have been served with process as Harvestons's agent and may have forwarded the citation and petition on to Harvestons, a letter from the Commissioner is not a proper substitute for a return of service showing strict compliance with the rules for service.

Furthermore, the Commissioner's certificates do not state that the one-page letter contained in her files accurately reflects the actions or events stated or indicated in the letter.[8] Although the letter does refer to the cause number in the unsevered case

---

**6.** Such a certificate from the Secretary is known as a "Whitney certificate" based on the name of the case in which the Texas Supreme Court first held such a certificate necessary. *See Whitney v. L & L Realty Corp.,* 500 S.W.2d 94, 96 (Tex.1973); *Wright Bros. Energy, Inc. v. Krough,* 67 S.W.3d 271, 273, n. 1 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

**7.** At present, whenever the Commissioner is served with process as agent for dealers such as Harvestons, the Texas Securities Act states that the Commissioner must forward the process received by mail to the dealer's last known address. *See* TEX.REV.CIV. STAT. ANN. art. 581–8 (Vernon Supp.2006). Until September 1, 2001, it appears that the Texas Securities Act did not expressly require the Secretary to forward any process that had been served upon the Secretary as agent for dealers such as Harvestons. *See* Texas Securities Act, 55th Leg., R.S., ch. 269, § 16, 1957 Tex. Gen. Laws 575, 593, *repealed by* Act of May 27, 2001, 77th Leg., R.S., ch. 1091, § 2.24, 2001 Tex. Gen. Laws 2399, 2419 (current version at TEX.REV.CIV. STAT. ANN. art. 581–8 (Vernon Supp.2006)). The absence of such language from the Texas Securities Act when JoAnn Kocerek was served in September 2000, does not affect our analysis of whether the *Capitol Brick* line of cases should be extended to certificates from the Commissioner.

**8.** In its motion for rehearing, Narnia argues that the Commissioner's certificates are public records under Texas Rule of Evidence

in the trial court, the letter does not state the Secretary has been served as Harvestons's agent for service of process. It is addressed to Harvestons and indicates it was sent by regular and certified mail. The body of this letter states in its entirety:

The Securities Commissioner has received process in the above-referenced lawsuit. Since Harveston Securities, Inc. [sic] is named as a defendant, we are forwarding process to you.

Though the letter states that the petition names Harvestons as a defendant, the letter does not state that the Commissioner received citation addressed to Harvestons.[9] The documents attached to the certificates in question do not reflect a copy of any enclosure that may have accompanied the letter. Nor do these documents reflect that Harvestons received any letter from the Commissioner.[10]

 Texas courts strictly enforce compliance with service-of-process statutes. See Whitney v. L & L Realty Corp., 500 S.W.2d 94, 97 (Tex.1973) (reversing a

default judgment because the record included proof of service on the Secretary, but not a *certificate* that the Secretary had forwarded process to the defendant); *World Distributors, Inc. v. Knox,* 968 S.W.2d 474, 478 (Tex.App.-El Paso 1998, no pet.) (finding service defective under section 17.045 where nothing in the record affirmatively established that the address provided to the Secretary was the home office of the defendants). Substantial compliance will not suffice. Thus, even presuming that Harvestons had actual knowledge of Narnia's lawsuit, it still would not be proper to affirm the default judgment on this basis.[11] *See North Carolina Mut. Life Ins. Co. v. Whitworth,* 124 S.W.3d 714, 721 (Tex.App.-Austin 2003, pet. denied) (concluding that despite the indications in the record that appellant eventually received a copy of the citation and petition, the service of citation did not strictly comply with the rules of procedure and therefore the default judgment cannot stand).

The strict-compliance requirements in the default judgment context preclude

803(8) as well as proper evidence of the contents of the Commissioner's files under Texas Rule of Evidence 901(b)(7). However, even if these arguments are correct, that does not alter the reality that the Commissioner's certificates themselves do not address whether the Commissioner received or was served with a citation or petition in any case. Even presuming the two-sentence letter attached to one of the certificates is identical to a document contained in the Commissioner's files, this only proves that such a document exists in the Commissioner's files. It is not the equivalent of the Commissioner certifying that she has been served with process in this case as Harveston's agent for service of process.

9. In its motion for rehearing on appeal, Narnia asserts for the first time that, in the letter, the Commissioner "admitted that she had received process pursuant to Harvestons['] power of attorney." However, the Commissioner's letter does not make this statement.

10. In its motion for rehearing in this court, Narnia argues for the first time that the Com-

missioner's two certificates and the documents attached thereto "[t]aken together ... qualify as a party's admission under [Texas] Rule [of Evidence] 801(e)(2)(D)." Narnia cites no cases holding that statements by an agent for service of process in a letter are admissions binding on the principal. In any event, the assertion that the Commissioner's letter contains admissions does not address the content of the Commissioner's statements in the letter and whether this letter should be considered as a substitute for a return of service under the *Capitol Brick* line of cases.

11. Narnia refers to evidence attached to its response to Harvestons's untimely motion for new trial. This evidence contradicted an affidavit attached to Harvestons's motion. However, on a restricted appeal, we cannot consider this evidence because it was not before the trial court when the trial court rendered the default judgment. *See Alexander,* 134 S.W.3d at 848–49.

courts from making even the most obvious and rational inferences. *See, e.g., Verlander Enter., Inc. v. Graham,* 932 S.W.2d 259, 262 (Tex.App.-El Paso 1996, no writ) (holding that a notation of "Jim Gore" rather than "[corporation] through its vice-president, Jim Gore" on return did not establish that person served was in fact corporation's agent for service of process, nor did it establish that corporation was served, and thus return was insufficient to convey jurisdiction over corporation upon trial court). The certificates in question and the documents attached thereto are not the legal equivalent of either a proper return of service or the Secretary's statements in a certificate showing proper service of the citation and petition under the applicable statute.[12] Therefore, we decline to extend the *Capitol Brick* line of cases to the certificates in this case. *See* TEX.R. CIV. P. 107; *North Carolina Mut. Life Ins. Co.,* 124 S.W.3d at 721. Because this line of cases does not apply, our record must reflect strict compliance with the rules for issuance of citation, service, and return of service.

**B. Does the record reflect that the return of service for process vested the trial court with jurisdiction to render the default judgment?**

A default judgment cannot withstand a direct attack by a defendant who shows that it was not served in strict compliance with the rules governing service of process. *Primate Constr., Inc.,* 884 S.W.2d at 152. In contrast to the usual rule that all presumptions will be made in support of a judgment, in a restricted appeal there are no presumptions of valid issuance, service, or return of citation when examining the default judgment. *See Id.; Massachusetts Newton Buying Corp. v. Huber,* 788 S.W.2d 100, 101 (Tex. App.-Houston [14th Dist.] 1990, no writ). In the absence of an appearance by the defendant in question, there must be an affirmative showing of due service of process, independent of the recitations in the default judgment. *Huber,* 788 S.W.2d 100, 101.

The recitations in the return of citation are prima facie evidence of the facts recited in the return. *Primate Constr., Inc.,* 884 S.W.2d at 152. The recitations in the return of citation carry enough weight that they cannot be rebutted by the uncorroborated proof of the moving party. *Id.* Further, a return of citation does not cease to be prima facie evidence of the facts of service simply because the facts are recited in a form rather than filled in by the process server. *Id.* It is the responsibility of the party requesting service, not the process server, to see that service is properly accom-

---

**12.** On rehearing, Narnia asserts case is very similar to *Interconex, Inc. v. Ugarov,* No. 01–05–00524–CV, —— S.W.3d ——, ——–——, 2006 WL 2506562, at *10–13 (Tex.App.-Houston [1st Dist.] Aug. 31, 2006, no pet. h.). We disagree. The *Interconex* court held that the trial court did not abuse its discretion in denying appellant's motion to set aside a default judgment because there was sufficient evidence that appellant's failure to answer was not the result of an accident or mistake. *See id.* In *Interconex,* the defendant's agent for service of process testified there was "no doubt" that his signature was on the citation; yet he also contended that he had not been served with process. *See id.* at ——–——, 2006 WL 2506562 at *11–12. He also testified that he forwarded all process that he received as Interconex's agent to Interconex's president and its attorney. *See id.* The *Interconex* case did not involve a restricted appeal or any issue regarding the validity or sufficiency of the service of process or the return of citation. *See id.* at ——–——, 2006 WL 2506562 at *10–13. Nor did the *Interconex* case involve the application of the *Capitol Brick* line of cases. *See id.*

plished. *See id.* This responsibility extends to seeing that the service is adequately reflected in the record. *Id.* If proper service is not affirmatively shown in the record, then error exists on the face of the record and a default judgment cannot stand. *Id.*

Texas Rule of Civil Procedure 107, which governs the return of citation, reads in pertinent part:

> The return of the officer or authorized person executing the citation shall be endorsed on or attached to the same; it shall state when the citation was served and the manner of service and be signed by the officer officially or by the authorized person.

Tex.R. Civ. P. 107. The return of citation is not a trivial or merely formalistic document. *See Primate Constr., Inc.,* 884 S.W.2d at 152. If any of these requirements are not met, the return of citation is fatally defective and will not support a default judgment under direct attack. *See McGraw–Hill, Inc. v. Futrell,* 823 S.W.2d 414, 416 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

In this case, the return of service indicates that the citation was executed on September 7, 2000, at "200 E. 10th, Austin, Texas 78701 in Travis County . . . by delivering to Harvestons Securities, by serving the Texas Securities Commissioner, *by delivering to JoAnn Kocerek, defendant, in person,* a true copy of this citation together with the accompanying copy of the petition attached thereto." (emphasis added). Harvestons contends that the return of service is defective because there is no showing in the record that JoAnn Kocerek is authorized to accept service on behalf of it or the Texas Securities Commissioner.

The face of the record does not identify Jo Ann Kocerek or her status or affiliation, if any, with the Texas Securities Commis-

sioner. Neither the return nor any other portion of the record designates Jo Ann Kocerek as an authorized representative of the Commission or indicates that she has the authority to receive service on behalf of Harvestons or the Commissioner. Indeed, it is simply not possible to determine from the record who Jo Ann Kocerek is or whether she is an agent authorized to accept service on behalf of either the Commissioner or Harvestons. Without an indication on the face of the record of her capacity or authority, if any, to receive service, the granting of the default judgment was improper. *Compare Reed Elsevier, Inc. v. Carrollton–Farmers Branch Indep. Sch. Dist.,* 180 S.W.3d 903, 905 (Tex.App.-Dallas 2005, pet. denied) (concluding that return of service was defective because it did not indicate the capacity of "Danielle Smith" or why she was served with process); *and Benefit Planners L.L.P. v. RenCare, Ltd.,* 81 S.W.3d 855, 861 (Tex.App.-San Antonio 2002, pet. denied) (holding that service was defective because the return did not recite that the citation was delivered to "Benefit Planners through its registered agent."); *Barker CATV Constr., Inc. v. Ampro, Inc.,* 989 S.W.2d 789, 793 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (holding that the return showing service on "James Barker" does not establish that he was defendant's agent or that Barker CATV Construction, Inc. was served); *and Galan Enter. v. G. Wil–Tex Co., Inc.,* No. 01–92–01246–CV, 1993 WL 471403, at *1–2 (Tex.App.-Houston [1st Dist.], Nov. 18, 1993, no pet.) (concluding that return of service was invalid because party failed to establish that Barbara Galan was in fact a person authorized to accept service) (not designated for publication); *with Pleasant Homes Inc. v. Allied Bank of Dallas,* 776 S.W.2d 153, 154 (Tex.1989) (holding that the return of service was sufficient where the return's reference to a "V.P." was deemed

prima facie evidence of the person's identity). Harvestons has established error on the face of the record. Service of process was defective. Therefore, the trial court erred in granting a default judgment against Harvestons. Accordingly, we sustain Harvestons's second issue.[13]

We reverse the trial court's default judgment and remand this case for further proceedings consistent with this opinion.

EDELMAN, J., dissenting.

RICHARD H. EDELMAN, Justice, dissenting.

The dissenting opinion issued in this case on October 31, 2006 is withdrawn, and the following substitute dissenting opinion is issued in its place.

A default judgment can be upheld only if, among other things, the record affirmatively shows strict compliance with the rules for service of citation. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 151 (Tex.1994). Although a proper return of service can often be *prima facie* proof of such compliance, there are instances in which it is not sufficient to do so and therefore irrelevant to the issue.

One example of this is where the Secretary of State is deemed to be a defendant corporation's agent for service of process under article 2.11(B) of the Business Corporation Act ("BCA").[1] Upon being served with process pursuant to this provision, the Secretary of State is required to immediately forward a copy by registered mail to the corporation at its registered office address.[2] However, to obtain a default judgment after such service, it is not sufficient for the record to merely show proper service of citation on the Secretary of State. *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 96 (Tex.1973). Instead, the record must show that the Secretary of State received and forwarded a copy of the process to the defendant in accordance with the statute. *Id.* This requirement can be conclusively satisfied with a certificate from the Secretary of State indicating that he received and forwarded a copy of the citation and petition to the defendant in the manner prescribed. *Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 465–66 (Tex.2004).[3] A default judgment issued after such service will be upheld even if the record affirmatively shows that the process forwarded by the Secretary of State was returned undelivered and was

---

13. Because we sustain Harvestons's second issue, it is not necessary for this court to reach Harvestons's other appellate issues, all of which are related to defective service of process.

1. *See* TEX. BUS. CORP. ACT ANN. art. 2.11(B) (Vernon Supp.2006) ("Whenever a corporation shall fail to appoint or maintain a registered agent in this State, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the Secretary of State shall be an agent of such corporation upon whom any such process, notice, or demand may be served.").

2. *Id.* ("In the event any such process, notice, or demand is served on the Secretary of State, he shall immediately cause one of the copies thereof to be forwarded by registered mail,

addressed to the corporation at its registered office.").

3. Although article 2.11 requires the Secretary of State to forward the process to the corporation at its registered office, the opinion in *Campus Investments* does not indicate that the certificate in that case recited that the address to which process had been sent was the defendant's registered address or that recitation of that fact was required. 144 S.W.3d at 465–66. If compliance with the rules for service of process is shown by the record, a defendant can overturn a default judgment by developing evidence in a motion for new trial or bill of review of either a lack of receipt of service or the *Craddock* elements. *See Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 573–74 (Tex.2006).

therefore never received by the defendant. *Id.* In addition, where the record reflects such receipt and forwarding by the Secretary of State, it dispenses with any requirement that the default judgment record even include the citation and return. *Id.*

In recognizing that a certificate from the Secretary of State is a sufficient form of evidence to reflect the required information, the opinion in *Campus Investments* cited the following provision:

> All *certificates* issued by the Secretary of State in accordance with the provisions of this [Business Corporation] Act, *and all copies of documents filed in his office in accordance with the provisions of this Act, when certified by him,* shall be taken and received in all courts, public offices, and official bodies as *prima facie* evidence of the facts therein stated. . . .

*Id.* at 465 (citing TEX. BUS. CORP. ACT ANN. art. 9.05(A) (Vernon 2003) (emphasis added)). Therefore, although a certificate was used in that case, it logically follows from the language of article 9.05(B) that a certified copy of another document, containing the necessary information and filed with the Secretary of State, would have also been sufficient.

In this case, as a securities dealer registered in the State of Texas, Harvestons was required to, and did, file an irrevocable power-of-attorney, appointing the Securities Commissioner its attorney-in-fact upon whom service of process could be served and further stating:[4]

that any and all lawful processes against it which may be served upon its said attorney-in-fact shall be deemed valid personal service upon said corporation, and that all process served upon the said Securities Commissioner shall be and have the same effect as if such corporation were organized and created under the laws of the State of Texas, and had been lawfully served with process therein.

*See* Texas Securities Act, 55th Leg., R.S., ch. 269, § 16, 1957 Tex. Gen. Laws 575, 593, *repealed by* Act of June 15, 2001, 77th Leg., R.S., ch. 1091, § 2.24, 2001 Tex. Gen. Laws 2399, 2419 (current version at TEX. REV. CIV. STAT. ANN. art. 581–8 (Vernon Supp.2006–2007)).[5] Like article 2.11(B) of the BCA, the Securities Act requires the Securities Commissioner, when served with such process, to forward it by United States (not certified) mail to the last known address of the dealer. TEX.REV.CIV. STAT. ANN. art. 581–8 (Vernon Supp.2006– 2007). In addition, like article 9.05(A) of the BCA, the Securities Act provides:

> Copies of all papers, instruments, or documents filed in the office of the Commissioner, certified by the Commissioner, shall be admitted to be read in evidence in all courts of law and elsewhere in this state in all cases where the original would be admitted in evidence.

*Id.* art. 581–30 (Vernon Supp.2006–2007). However, unlike article 9.05(A), article 581–30 of the Securities Act makes no specific reference to issuance of a certificate.[6]

---

4. A certified copy of this power-of-attorney was included in the default judgment record.

5. Although not material to the disposition, this suit was filed in 2000, before former article 581–16 was repealed.

6. Although article 9.05(A) also uses the term, "evidence" rather than "prima facie evi-

dence," it is not apparent how facts stated in a document can be admissible evidence of those facts without also being *prima facie* evidence thereof, such that this difference in phrasing would indicate a difference in effect. Nor is it logical that certified copies of documents from the Secretary of State's office would somehow have any greater evidentiary

As evidence of compliance with the requirements for service of process, the default judgment record in this case contains a certified copy of a letter (the "letter") from the Securities Commissioner to Harvestons. This letter references the style and case number of this case in the trial court and states: "The Securities Commissioner has received process in the above-referenced lawsuit. Since HARVE-STON SECURITIES, INC. [sic] is named as a defendant, we are forwarding process to you." The letter thus reflects that service of process was received by the Commissioner and forwarded to Harvestons in accordance with article 581–8 [7] and is sufficient evidence of these facts under article 581–30. Because the default judgment record thereby reflects compliance with the rules for service of process that apply in this case, the sufficiency of the return of citation showing service on the Commissioner is immaterial. Accordingly, I would not reverse the judgment of the trial court for a defective showing of service of process.

---

value than those from the Securities Commissioner's office.

**7.** Although not required by article 581–8, this letter was sent by certified mail.