Reversed and Remanded and Memorandum Opinion filed August 9, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00244-CV

___________________

 

Narnia Investments, Ltd.,
Appellant

 

V.

 

Harvestons Securities, Inc.,
Appellee



 



 

On
Appeal from the 270th District Court

Harris County,
Texas



Trial Court Cause No. 2000-39672A

 



 

 

MEMORANDUM OPINION

            In this case arising from the alleged
sale of unregistered securities, the defendant moved for summary judgment on
traditional and no-evidence grounds.  The trial court granted the motion
without stating the grounds for its ruling.  We reverse.

I.  Factual and Procedural Background

            On August 3, 2000, appellant Narnia
Investments, Ltd. and Jon Ginder, Narnia’s sole owner, sued appellee Harvestons
Securities, Inc. and a half-dozen other defendants for claims connected with
Narnia’s 1998 and 1999 purchases of stock in Lexico Energy Exploration, Inc. (“Lexico
Energy”).  According to Narnia, Clarey Zingler and James Bischofberger (a/k/a
James Bisch or James Bish) told Ginder that Lexico Energy had agreed to sell
its assets in exchange for stock in Lexico Resources International Corporation
(“Lexico Resources”).  Narnia alleges that Bischofberger and Zingler
represented that all shareholders would receive a dividend or distribution of
1.85 shares of Lexico Resources for each share of Lexico Energy owned.  Allegedly
based on these representations, Narnia and Ginder purchased Lexico Energy
securities from Zingler and from Lex Dolton, both of whom were officers in the
two Lexico entities.  Although Lexico Energy transferred its assets to Lexico
Resources as agreed, Narnia never received the promised stock in Lexico
Resources.  

            Pleading that Harvestons Securities,
acting through its registered representative James Sanderson, was the broker in
Narnia’s Lexico Energy stock purchases, Narnia asserted claims against
Harvestons for deceptive trade practices, gross negligence, fraud, conspiracy,
and an assortment of statutory violations.  Narnia additionally pleaded that
Harvestons was liable for negligently supervising Sanderson.  Harvestons
initially did not file an answer, and at Narnia’s request, the trial court
granted default judgment against Harvestons and severed those claims from the
remainder of the suit.  Harvestons brought a restricted appeal on the ground
that service of process was defective, and we reversed the judgment and
remanded the case.  Harvestons Sec., Inc. v. Narnia Invs., Inc., 218
S.W.3d 126, 128 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (sub. maj.
op.).

            On remand, Harvestons moved for summary
judgment on the ground that there was no evidence that it acted as a broker in
any of the transactions.  In the same motion, Harvestons sought traditional
summary judgment on the grounds that (a) it was not the broker in the stock
transactions at issue, (b) Sanderson was not acting within the course and scope
of his employment if he performed brokerage services in those transactions, and
(c) Harvestons neither was served nor voluntarily appeared in the suit
before the applicable statutes of limitations expired.  

Narnia filed a single document
that combined its response, objections, and special exceptions to the summary-judgment
motion.  In this document, Narnia objected that Harvestons improperly based its
summary-judgment motion on unpleaded affirmative defenses.  In addition, Narnia
argued that Harvestons failed to eliminate genuine issues of material fact as
to its vicarious liability for Sanderson’s acts.  In support of this argument, Narnia
produced an affidavit in which Ginder attested that Sanderson was employed by
Harvestons at the time of the transactions.  Ginder added that Sanderson “stated
to me that he had received a commission on the sale of the securities to Narnia,”
but Ginder did not identify the person or entity that allegedly paid the
commission.  Narnia also produced a document that appears to be a typed,
unsigned letter to Ginder from Zingler, who represented that the letter “identifies
to the best of my knowledge Lexico Energy stock that was acquired by Jim Bish
and/or Jon Ginder.”  In this letter, Zingler identified Sanderson as the broker
in each transaction.  Zingler added, “Mr. Sanderson has always advised me that
Mr. Bish is his client . . . .  For the sale of Mr.
Dolton’s stock[,] Mr. Sanderson demanded a 10 percent commission from Mr.
Dolton.  Mr. Bish, at times, allocated stock to Mr. Sanderson to compensate him
for his services.”  Neither Narnia nor Harvestons is mentioned in the letter.  Finally,
Narnia attached documents from the State Securities Board providing information
about Sanderson’s employment history and his “other business.”  In these
documents, Sanderson is listed as Harvestons’s employee and not as an
independent contractor.  The entry in which information about Harvestons is
listed is followed by an entry providing information about Sanderson’s prior
employer, Chatfield Dean & Co.  That entry is followed by the heading,
“Other Business,” after which the single word “Lexico” appears.

            After Narnia filed its response,
Harvestons filed an answer to the suit in which it asserted the affirmative
defense of limitations, and objected to Narnia’s summary-judgment evidence.  Harvestons
asserted that Ginder’s affidavit was conclusory, lacked a proper foundation,
and was not based on personal knowledge “insofar as it purports to aver that
James Sanderson was involved in the stock transactions at issue, that he
received a commission, and that he was affiliated with Harvestons or dealt with
Plaintiff.”  The trial court sustained these objections, but overruled
Harvestons’s objections to Zingler’s letter and to the records from the State
Securities Board.  The record contains no ruling on Narnia’s special exceptions
and objections.

            The trial court granted Harvestons’s
motion without stating the grounds, and Narnia timely appealed.    

II.  Issues Presented

            In five issues, Narnia challenges
the trial court’s summary judgment in favor of Harvestons.  In its first issue,
Narnia contends that the trial court granted Harvestons more relief than it was
entitled to receive.  In its second issue, Narnia asserts that there are
genuine issues of material fact as to whether Harvestons acted as a “broker” as
that term is defined under the Texas Securities Act.  Narnia argues in its
third issue that the trial court erred if it granted summary judgment on the
ground that Sanderson was not acting in the course and scope of his employment
with Harvestons when he participated in these transactions.  In its fourth
issue, Narnia contends that the trial court erred if it based summary judgment
on Harvestons’s argument that Narnia’s claims are time-barred.  Narnia asserts
in its fifth issue that the trial court erred if it
granted summary judgment on no-evidence grounds. 

III.  Standard
of Review

            We review
summary judgments de novo.  Ferguson v. Bldg. Materials Corp. of Am.,
295 S.W.3d 642, 644 (Tex. 2009) (per curiam) (citing Tex. Mun. Power Agency
v. Pub. Util. Comm’n of Tex., 253 S.W.3d 184, 192 (Tex. 2007)).  We
consider the summary-judgment record in the light most favorable to the
nonmovant, indulging every reasonable inference and resolving any doubts
against the movant.  See City of Keller v. Wilson, 168 S.W.3d 802, 823
(Tex. 2005).  We must affirm the summary judgment if any ground in the motion
that would support that judgment is meritorious.  Progressive Cty. Mut. Ins.
Co. v. Kelley, 284 S.W.3d 805, 806 (Tex. 2009).

            The movant
for traditional summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter
of law.  Tex. R. Civ. P. 166a(c);
Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d
844, 848 (Tex. 2009).  A defendant who moves for traditional summary judgment
must conclusively negate at least one essential element of each of the
plaintiff’s causes of action or conclusively establish each element of an
affirmative defense.  Frost Nat’l Bank v. Fernandez, 315 S.W.3d 494, 508
(Tex. 2010).  Evidence is conclusive only if reasonable people could not differ
in their conclusions.  City of Keller, 168 S.W.3d at 816.  Once the
defendant establishes its right to summary judgment as a matter of law, the
burden shifts to the plaintiff to present evidence raising a genuine issue of
material fact.  Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197
(Tex. 1995).

            In a no-evidence
motion for summary judgment, the movant represents that there is no evidence of
one or more essential elements of the claims for which the nonmovant bears the
burden of proof at trial.  Tex. R. Civ.
P. 166a(i); Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 310
(Tex. 2009).  The burden then shifts to the nonmovant to present evidence
raising a genuine issue of material fact as to the elements specified in the
motion.  Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006). 
We sustain a no-evidence summary judgment when (a) there is a complete absence
of evidence of a vital fact, (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact,
(c) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (d) the evidence conclusively establishes the opposite of the
vital fact.  City of Keller, 168 S.W.3d at 810.  The evidence is
insufficient if “it is ‘so weak as to do no more than create a mere surmise or
suspicion’” that the challenged fact exists.  Akin, Gump, Strauss, Hauer
& Feld, L.L.P. v. Nat’l Dev. & Research Corp., 299 S.W.3d 106, 115
(Tex. 2009) (quoting Kroger Tex. L.P. v. Suberu, 216 S.W.3d 788, 793
(Tex. 2006)).

IV.  Analysis


A.        Overbreadth
of Summary-Judgment Relief

            We will
discuss issues one, two, three and five together.  On appeal, Narnia contends
that the trial court granted Harvestons “more relief than it was entitled to
under its Motion for Summary Judgment which only raised three issues with respect
to the allegations contained in Appellant’s Original Petition.”  Narnia argues
and cites authority that a trial court errs if it grants more relief than
requested or grants summary judgment on issues that were not raised in the
summary-judgment motion.  See, e.g., Tex.
R. Civ. P. 166a(c) (issues must be expressly set forth in the
summary-judgment motion, answer, or any other response); McConnell v.
Southside Indep. Sch. Dist., 858 S.W.2d 337, 339 (Tex. 1993) (same).  Narnia
further states, “None of the other causes of action alleged by Appellant were
addressed by Appellee’s motion for summary judgment.”  

            We agree.  In
the no-evidence portion of the summary-judgment motion, Harvestons did not
address Narnia’s claims for deceptive trade practices, gross negligence, fraud,
or conspiracy.  Instead, it addressed a single factual allegation with respect
to its alleged violation of securities statutes—without addressing any of the
causes of action Narnia asserted in connection with the alleged violations.  In
the traditional portion of the summary-judgment motion, Harvestons similarly
failed to specifically address Narnia’s claims for deceptive trade practices,
gross negligence, fraud, conspiracy, and the claims under the Texas Securities
Act.  Harvestons instead sought traditional summary judgment on the grounds
that (a) it was not the broker in the stock transactions at issue, and (b) Sanderson
was not acting within the course and scope of his employment if he performed
brokerage services in those transactions.  Although Narnia presented some
evidence that Sanderson was an employee and not an independent contractor, it
presented no evidence to contradict Harvestons’s proof that any role Sanderson played
in the securities transactions at issue was performed outside the course and
scope of his employment.  

            Harvestons maintains
that all of Narnia’s causes of action are based on representations and actions
taken by Sanderson, and if Sanderson’s involvement in the transactions at issue
was outside the course and scope of his employment, then all of Narnia’s causes
of action fail.  Narnia’s pleading, however, is not so narrowly drawn.  Narnia
alleged that Harvestons was the agent for Sanderson and the other defendants, a
control person over them, and aided and abetted them.  Narnia also alleged that
Harvestons was negligent in supervising Sanderson.  These claims were not
addressed in the motion for summary judgment. 

            Proof that Sanderson
was acting outside the course and scope of his employment at the time of the
transaction does not eliminate potential liability under the Texas Securities Act’s control-person provision.  That
section provides as follows:

A person who directly or indirectly controls a seller,
buyer or issuer of a security is liable under Section 33A, 33B, or 33C jointly
and severally with the seller, buyer, or issuer, and to the same extent as if
he were the seller, buyer, or issuer, unless the controlling person sustains
the burden of proof that he did not know and in the exercise of reasonable care
could not have known, of the existence of facts by reason of which liability is
alleged to exist. 

Tex. Rev. Civ. Stat. Ann. art. 581-33F(1) (West 2010).  

            Liability
under this theory does not depend on whether the controlled person acted within
the course and scope of his employment.  Liability
attaches to a “control person,” who “directly or indirectly controls a seller,
buyer, or issuer of a security.”  See id.; Sterling Trust Co. v.
Adderley, 168 S.W.3d 835, 839 (Tex. 2005).  If a person is shown to be a
“control person,” then that person is vicariously liable for the securities
violation of the person whom they control.  See Sterling Trust Co., 168
S.W.3d at 839.  Most courts that have addressed the issue have concluded that
the plaintiff need not prove that the alleged control person culpably
participated in the primary securities violation.  See, e.g., Fernea
v. Merrrill Lynch Pierce Fenner & Smith, Inc., No. 03-09-00566-CV, 2011
WL 2769838, at *15 (Tex. App.—Austin July 12, 2011, no pet. h.); Metge v.
Baehler, 762 F.2d 621, 630–31 (8th Cir. 1985); G.A. Thompson & Co.
v. Partridge, 636 F.2d 945, 957–58 (5th Cir. 1981).  We need not and do not
address in this opinion what a plaintiff is required to prove to establish
control-person liability, including whether the plaintiff must show culpable
participation.[1] 
Narnia sufficiently alleged control-person liability in its petition, and
Harvestons asserted no grounds in its summary-judgment motion to negate such
liability.  Even if Harvestons was not the broker in the transactions in
question and even if Sanderson was acting outside the course and scope of his
employment at Harvestons at all material times, these facts would not
conclusively establish that Harvestons has no liability as a control person.  See
generally Fernea, 2011 WL 2769838, at *15.  

            Proving only that Sanderson acted outside the
course and scope of employment also does not
eliminate a cause of action for aiding and abetting.  This cause of action is addressed in the Texas Securities
Act as follows:

A person who directly or indirectly with intent to deceive
or defraud or with reckless disregard for the truth or the law materially aids
a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or
33C jointly and severally with the seller, buyer, or issuer, and to the same
extent as if he were the seller, buyer, or issuer. 

Tex. Rev. Civ.
Stat. Ann. art. 581-33F(2).  To prove aider-and-abettor liability, the
plaintiff must demonstrate that (1) a primary violation of the securities
laws occurred, (2) the alleged aider had “general awareness” of its role
in this violation, (3) the alleged aider rendered “substantial assistance”
in the violation, and (4) the alleged aider either intended to deceive the
plaintiff or acted with reckless disregard for the truth of the representations
made by the primary violator.  Navarro v. Grant Thornton, LLP, 316
S.W.3d 715, 720–21 (Tex. App.—Houston [14th Dist.] 2010, no pet. h.); Frank
v. Bear, Stearns & Co., 11 S.W.3d 380, 384 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied).  Proof that the primary violator acted within the
course and scope of employment is not an element of this cause of action.  Cf.
Fernea, 2011 WL 2769838, at *14 (affirming summary judgment as to this
claim because evidence that the employer was aware of salesperson’s intent to
perform an outside sale was insufficient to show knowledge of illegality).[2]  

            Similarly, proof that any role Sanderson played
in the Lexico transactions was performed outside the course and scope of his
employment does not eliminate a cause of action for negligent supervision.  See
Houser v. Smith, 968 S.W.2d 542, 544 (Tex. App.—Austin 1998, no pet.) (“While
the employee need not be acting in the scope of his employment to impose
liability on the employer, the theory of negligent hiring and supervision does
require that a plaintiff’s harm be the result of the employment.”); Dieter
v. Baker Serv. Tools, 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1987,
writ denied) (“If course and scope was a required element of a negligent hiring
and supervision claim, negligent hiring and supervision as a unique cause of
action would be rendered superfluous by the respondeat superior doctrine.”);
cf. Knight v. City Streets, L.L.C., 167 S.W.3d 580, 584 (Tex.
App.—Houston [14th Dist.] 2005, no pet.) (to prevail in a negligent-supervision
claim, the plaintiff must prove that the employer had a duty to the plaintiff
to supervise the employee, breached the duty, and the breach proximately caused
the plaintiff’s injuries). 

            In sum, Harvestons’s summary-judgment
motion neither conclusively disproves any element of Narnia’s causes of action,
nor challenges the existence of evidence of any element supporting Narnia’s
causes of action.  We therefore sustain Narnia’s first, second, third, and
fifth issues.

B.        Limitations

            Harvestons
also moved for summary judgment on the affirmative defense of limitations but
did not contest Narnia’s point of error in its brief on appeal.  Harvestons
premised its motion for summary judgment on its assertion that, although the
suit was timely filed, it had never been served.  It argued that because we
reversed the default judgment against it due to lack of service, Harvestons had
not been served at all.  In fact, we did not hold that Harvestons had not been
served but that the return of service was deficient.  218 S.W.3d at 134–35. 
Given the facts and procedural history of this case, we decline to conclude
that Narnia’s claims are time-barred.  We therefore sustain Narnia’s fourth
issue.

V.  Conclusion

            Because the trial court erred in granting
a final summary judgment dismissing Narnia’s claims, we reverse the judgment
and remand this case to the trial court for further proceedings.

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

 

Panel consists of Chief
Justice Hedges and Justices Frost and Christopher.









[1] Research reveals no
holdings from the Supreme Court of Texas or this court addressing these issues.





[2] To impose liability for
aiding and abetting a securities violation, the plaintiff must prove that the
defendant intended to deceive the plaintiff or was aware of the primary
violator’s improper activities.  See Frank, 11 S.W.3d at 384.  Although
Harvestons produced evidence that it was unaware of Sanderson’s alleged
activities, Harvestons did not move for summary judgment on this basis.